E. L. BROOKS, Appellant,

v.

LPCX CORPORATION and State of
Oklahoma, Appellees.

No. 51455.

Supreme Court of Oklahoma.

Dec. 12, 1978.

Shutler, Baker, Simpson & Longsdon,
Kingfisher, for appellant.

Larry Derryberry, Atty. Gen. of Okl.,
Harry C. Marberry, Oklahoma City, for ap-
pellees.

WILLIAMS, Justice.

Appellee, LPCX Corporation, ap-
plied to the Corporation Commission for an
order establishing 160 acre drilling and
spacing units for the production of gas and
gas condensate from the Red Fork Forma-
tion in a certain Sec. 4 and the East Half of
Sec. 33, which adjoins it on the north, in
Kingfisher County, Oklahoma. Since the
evidence refers to sections in three differ-
ent townships, for purposes of simplicity we
omit reference to the township and range
numbers.

After statutory notice was given, a hear-
ing was held before a Trial Examiner pur-
suant to 52 O.S.1971, Sec. 87.1(a) and (b), at
which appellant herein, E. L. Brooks, ap-
peared as one of several protestants. After
hearing expert testimony for and against
the application, the Trial Examiner took the
matter under advisement and later recom-
mended to the Commission that the applica-
tion be granted. After considering the ob-
jections filed by appellant Brooks, the Com-
mission promulgated Order No. 133769 es-
tablishing 160 acre drilling and spacing
units as requested by the applicant. Appel-
lant then instituted the appeal which is now
before this Court.

There is no substantial dispute as to the
applicable law, and the briefs in this case

consist largely of a discussion of the evidence in the light most favorable to the respective parties.

It appears that appellant's interest in the application arises because he is the owner of leases on which there is a producing well in a certain Section 26, located a little over two miles northeast of the two sections here concerned, drilled to the Red Fork Formation, which is subject to a 640 acre spacing order. The sole proposition set out in his brief is as follows: "There is not sufficient evidence for the Commission to have entered an order establishing 160 acre spacing units in Section 4 and the E/2 of Section 33, as applied for; and the Commission has abused its discretion in ordering and establishing 160 acre drilling and spacing units for the Red Fork Formation in this area".

In argument under this proposition appellant places emphasis upon expert testimony to the effect that a well drilled to the Red Fork Formation in the area concerned would probably drain the gas for about a half mile in all directions. His argument is that if 160 acre spacing is permitted in the area concerned, mineral interest owners in Sec. 26 and three adjoining sections, which are also subject to a 640 acre spacing order, might be required to apply for permission to drill more wells in order to recover their fair share of the gas in the same common source of supply as fast as the owners in the 160 acre spacing units. His conclusion is that this would constitute economic waste, which is prohibited by 52 O.S.1971, Sec. 86.2.

This argument might be more persuasive if only the economic interests of the working interest owners were involved; however, the economic interests of the royalty owners must also be considered. Sec. 86.1 defines "Common Source of Supply" as " * * * that area which *is underlaid* or which, from geological or other scientific data, or from drilling operations, or other evidence *appears to be underlaid,* by a common accumulation of oil or gas or both * * *" (emphasis added). Under Sec. 87.1(a), the Commission is authorized to establish spacing units " * * * of approxi-

mately uniform size and shape covering any common source of supply, or prospective common source of supply * * *". For these reasons, it was necessary for the Commission to consider the question of which portions of the area concerned (Sec. 4 and the East Half of Sec. 33, immediately adjoining it on the north) were underlaid by the Red Fork Formation.

On this question we find testimony by an expert witness, the gist of which is summarized on a map prepared by him as an exhibit, to the effect that, as it runs through this portion of Kingfisher County, the Red Fork Formation is " * * * nothing but a river channel delineated by the lines on the exhibit that look about a quarter of a mile wide; the productive limits are probably somewhat less, maybe a thousand feet". The exhibit shows that the formation runs generally from the northeast to the southwest through this portion of Kingfisher County, in a slightly meandering way. It underlays substantial portions of the north half and the southwest quarter of Sec. 4 and both of the east quarter sections of Sec. 33. The southeast edge of the formation touches only the northwest corner of the southeast quarter of Sec. 4. The location of the formation, as outlined by this witness on the exhibit, appears to be substantiated at least in part by 4 producing wells about two miles to the northeast, including appellant's well, and 8 producing wells considerably closer on the south and southwest, and by a number of dry holes that have been drilled between the two groups of producing wells.

Appellant's argument also emphasizes the provision of Sec. 87.1(a) that the spacing units shall be " * * * of approximately uniform size and shape * * *". On this question, the record shows that four sections in the vicinity of appellant's producing well in Sec. 26 and one section immediately to the southwest of the sections here concerned (4 and 33), are all subject to existing 640 acre spacing orders. However, it also shows that one section abutting Sec. 4 on the northwest and three other sections beginning one mile west of Sec. 4 are subject

to existing 160 acre spacing orders. In view of this evidence, and the evidence as to the narrow width of the Red Fork Formation in this area, it cannot be said the 640 acre spacing is necessarily required in the two sections here concerned.

 The exact delineation of an underground channel such as the Fed Fork Formation is admittedly difficult and a proper subject for expert testimony. In the first paragraph of Sec. 87.1(b)(1), the factors to be considered by the Commission in establishing a spacing unit are listed. The first one is "The lands embraced in the actual or prospective common source of supply" (meaning as we have seen, the lands *underlaid* by the producing formation). All factors listed are subject to the requirement in the same paragraph, that " * * * due and relative allowance for the correlative rights and obligations of the producers *and royalty owners* interested therein" (emphasis supplied) be made. The expert witness for the applicant-appellee was of the view that the southeast quarter of Section 4 is not underlaid by the Red Fork Formation, merely touching the edge of it at the northwest corner. If this is correct, a 640 acre spacing unit for Sec. 4 would have been unfair to the royalty owners in the other three quarter sections, because they would have had to share the royalty payments with owners of royalty in the southeast quarter section. On the other hand, under the 160 acre spacing units established by the Commission, if a producing well is drilled on the southeast quarter, the payments will be made to the royalty owners properly entitled thereto.

After a careful review of the record before us, we hold that the order of the Commission is sustained by the law and substantial evidence. Under well settled law and the applicable portion of Art. IX, Sec. 20, Oklahoma Constitution, it must be affirmed.

The order of the Corporation Commission is therefore affirmed.

HODGES, C. J., LAVENDER, V. C. J., and IRWIN, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.